UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WELLS FARGO BANK, N.A.,<br><br>    Plaintiff/Counter-Defendant,<br><br>v.<br><br>WORLDWIDE SHRIMP COMPANY and WILLIAM J. APPELBAUM,<br><br>    Defendants/Counter-Claimants. | No. 17 CV 4723<br><br>Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff/counter-defendant Wells Fargo Bank, N.A.'s complaint alleges that defendants/counter-claimants Worldwide Shrimp Company and William J. Appelbaum breached a loan agreement. Defendants have counterclaimed, alleging that Wells Fargo breached that agreement (and that Wells Fargo tortiously interfered with their contractual relationships and business expectancies). Wells Fargo says it has documents that, taken in combination with the terms of the agreement and generally accepted accounting principles, prove that it did not breach the agreement, and that defendants' tortious interference claims fail as a matter of law. It also says that defendants have not done enough to remedy the problems that led to the dismissal of their original breach-of-contract counterclaim. Wells Fargo moves to dismiss those counts from the amended counterclaim.

## I. Legal Standards

A complaint must contain a short and plain statement that plausibly suggests a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, but the court need not accept legal conclusions or conclusory allegations. *Ashcroft*, 556 U.S. at 680–82. A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007). *See also Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 827 (7th Cir. 2015) (many of the same rules that apply to a motion to dismiss a complaint apply to a motion to dismiss a counterclaim).

## II. Facts

Much of the factual background relevant to the parties' dispute has been recounted in other orders. *See, e.g.,* [164].[1] What is pertinent to Wells Fargo's present motion are the allegations in defendants' amended counterclaim. *See* [181]; Fed. R. Civ. P. 12(b), (d). According to the amended counterclaim, Wells Fargo extended a line of credit to Worldwide and Appelbaum worth $15 million, [181] at 37, ¶ 7,[2] and,

---

[1] Bracketed numbers refer to entries on the district court docket. Worldwide and Appelbaum's first amended answer to the first amended complaint, [181], contains three sets of numbered paragraphs; one for Worldwide and Appelbaum's responses to Wells Fargo's allegations, [181] at 1–35, ¶¶ 1–97; one for Worldwide and Appelbaum's affirmative defenses, [181] at 35–36, ¶¶ 1–4; and one for Worldwide and Appelbaum's counter-claims. [181] at 36–54, ¶¶ 1–75. For that reason, citations to the answer include both page and paragraph numbers.

[2] The terms of that line of credit (and loans made pursuant to it) were documented in a "Credit Agreement" ([1-1] at 3–22), a "Revolving Line of Credit" note, ([1-1] at 24–29), a "Security Agreement" ([1-1] at 31–37), and a "Guaranty" ([1-1] at 41–46). Defendants incorporated these documents into their counterclaim by referencing them, citing to them, and

in return, Worldwide promised to maintain, in accordance with "generally accepted accounting principles," (1) a "tangible net worth" of not less than $2.0 million, [1-1] at 10, § 4.9(a); [1-1] at 19, § 2; [1-1] at 22, § 4[3], (2) "minimum net income after taxes not less than $1.00 as of each fiscal quarter end," [1-1] at 10, § 4.9(b); [1-1] at 19, § 3[4], and (3) certain books and records. *See, e.g.*, [1-1] at 9, § 4.2.

Worldwide also promised to provide Wells Fargo with annual and monthly financial statements. [1-1] § 4.3(a), (b), (f). Each annual financial statement was to be accompanied by a certificate verifying that the statements were accurate, and that Worldwide was "in compliance with all financial covenants … and that there exists no Event of Default nor any condition … which with the … passage of time … would constitute an event of default." [1-1] § 4.3(f).

The loan documents list eight "events of default," [1-1] at 12–13, § 6.1, including "[a]ny default in the performance of or compliance with any obligation, agreement or other provision" contained in any of the loan documents. *Id.* § 6.1(c). Upon the occurrence of an event of default, the loan documents grant Wells Fargo the right to certain remedies, including the right to make "all indebtedness of Borrower … immediately due and payable," and the right to opt out of "extend[ing] any further credit under any of the Loan Documents." [1-1] at 13, § 6.2(b).

---

acknowledging that they are true and correct copies of the agreements in question. *See* [181] ¶¶ 7, 9. I refer to them collectively as the "loan documents."

[3] Section 4.9(a) was amended twice. The text reflected here is that from the Second Amendment to Credit Agreement, which governed as of the date of the alleged breaches.

[4] Section 4.9(b) was amended once. The text reflected here is that from the First Amendment to Credit Agreement, which governed as of the date of the alleged breaches.

3

In late 2016, Appelbaum came to believe that the price of shrimp was about to drop. [181] at 38–39, ¶ 12. He called his banker at Well Fargo (Keith Cable) for advice, and was told it would be best to prospectively recognize a decline in the value of Worldwide's inventory. [181] at 39, ¶¶ 13, 14. In the year-end financial and accounting reports that Appelbaum and Worldwide provided to Wells Fargo, defendants "formally wrote down the value of [their] inventory." [181] at 40, ¶ 18. Appelbaum's prediction ultimately proved untrue, and the value of Worldwide's inventory never dropped below the level required by their loan documents. [181] at 45–46, ¶ 40.

In the months that followed, defendants allege that they consistently provided Wells Fargo with detailed financial information, including information about their inventory, accounts receivable, and sales. [181] at 42–43, ¶¶ 27–28. To the degree that Wells Fargo requested additional information that it did not already have, defendants say they provided it. *Id*. at 44, ¶¶ 30–37. Wells Fargo found at least some of this additional information sufficient. *Id*. ¶ 37. Defendants allege that they have "never been in default of any of the covenants contained in the loan documents." [181] at 46, ¶ 41.

In December, 2018, when granting in part, denying in part Wells Fargo's motion to dismiss the initial counterclaim, I noted that "[d]ocuments evidencing the write-down (such as 2016 year-end financial reports, *see* [162] at 4, n.5) were not attached to the complaint, *see* [1-1], the answer, [150-1], or any of the briefs," and remarked that, even if they had been, neither party had briefed "whether 'generally

accepted accounting principles' require recognizing the method of write-down that Worldwide employed." [164] at 10–11. I also noted that Wells Fargo had not shown that accounting principles could be applied as a matter of law. *Id.* at 11. Defendants filed an amended answer and amended counterclaim, [181]; [182], and Wells Fargo's motion to dismiss that amended counterclaim followed. [188].

## III. Analysis

Wells Fargo's motion seeks a determination that Worldwide's write-down resulted in an event of default under the loan documents. If that were true, Wells Fargo posits that Worldwide's counterclaim for breach of contract would fail because the actions Wells Fargo took would have been authorized. In support of its motion, Wells Fargo has submitted documents that it asserts constitute Worldwide's 2016 year-end financial statements, [189-1]; [189-5], and which Wells Fargo argues demonstrate that an event of default occurred—provided that one use "generally accepted accounting principles" to determine their significance. *See* [189] at 7–15.

A court must convert a motion to dismiss to one for summary judgment if it considers documents outside of the pleadings (and, before doing so, must give the parties a reasonable opportunity to present all pertinent material). Fed. R. Civ. P. 12(d). *See also* Fed. R. Civ. P. 7(a)(2) (an answer to a complaint is a type of pleading); 13(a), (b) (both compulsory and permissive counterclaims must be contained in a pleading). Many of the arguments made here (and much of the evidence submitted in support of those arguments) are better suited for disposition under Federal Rule of Civil Procedure 56, but I decline to convert the motion to one for summary judgment.

5

The parties have not conducted discovery on the import of the documents and have not complied with Local Rule 56.1. Conversion of the motion would add to costs imposed on the parties without adding efficiency.

There is an exception to Rule 12(d) that allows for consideration of a document not contained in the pleadings where the pleading references that document, that document is "central" to the claim advanced, and the party seeking to dismiss the pleading attaches that document to their Rule 12(b) motion. *Wright v. Associated Ins. Companies Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Wells Fargo argues that the financial statements it has attached to its motion are "referenced time and time again throughout" both Wells Fargo's complaint and defendants' counterclaim, and are central to both, too. [189] at 9 n.3.[5] The counterclaim alleges that Worldwide "formally wrote down the value of its inventory effective December 31, 2016 by prospectively

---

[5] In making that argument, Wells Fargo points only to places where these financial statements are referenced in their own complaint (or within defendants' answer thereto); they make no citations to the counterclaim they seek to dismiss. *See* [189] at 9 n.3 (citing [1] at 6–7, ¶¶ 35–37; [181] at 13–15, ¶¶ 35–37). The cases they cite in support each discuss documents that are referenced in (or attached to) the complaint that is the subject of the motion to dismiss. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Brownmark Films, LLC*, 682 F.3d at 690. None support the proposition that a document referenced in a complaint (or even attached thereto) can be used to seek dismissal of a counterclaim. Many of the other rules that apply to complaints apply with equal force to counterclaims, *Firestone Fin. Corp. v. Meyer,* 796 F.3d 822, 827 (7th Cir. 2015); *Qualey v. U.S. Metals, Inc.*, No. 08 C 2636, 2009 WL 972612, at *1 (N.D. Ill. Apr. 8, 2009), and the incorporation-by-reference doctrine is no different. *Wells Fargo Bank v. Leafs Hockey Club, Inc.*, No. 13 C 2247, 2014 WL 1017211, at *4 (N.D. Ill. Mar. 14, 2014) ("because [defendant] does not refer to this document in its Counterclaim, the Court cannot incorporate it by reference"). Nonetheless, elsewhere in its motion, Wells Fargo does cite portions of Worldwide's counterclaim that reference the financial reports in question, *see, e.g.,* [189] at 8–9, and I decline to find that Wells Fargo has forfeited this argument because it failed to cite to the proper source at the proper time.

recognizing the write down in the year-end accounting reports and financial reports it provided to WF to on January 3, 2017." [181] at 40, ¶ 18. Defendants' opposition to Wells Fargo's motion mentions these documents, too. [192] at 4–5 (arguing that Wells Fargo "chose to focus almost exclusively on the preliminary financial statements submitted on January 3, 2017 when considering whether WWS was in default").

The incorporation-by-reference doctrine is meant to keep plaintiffs from "evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to [their] complaint a document that prove[s] that [their] claim had no merit." *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Despite courts' "relatively liberal" approach to the exception, *Hecker v. Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009), it remains a "narrow" one. *188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 735 (7th Cir. 2002). It is aimed "at cases interpreting … a contract," *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998), and is broad enough to include documents incorporated into the contract by reference. *188 LLC*, 300 F.3d at 735 (incorporating by reference a form that defendant alleged the parties' agreement incorporated by reference). The documents must be "concededly authentic" and must not require "discovery to authenticate or disambiguate." *Tierney*, 304 F.3d at 738–39; *Levenstein*, 164 F.3d at 347 (the district court was within its discretion when, "noting that [plaintiff] wanted further discovery," it "chose to handle the case as a straightforward motion to dismiss, rather than converting it to a motion under Rule 56").

Defendants object to the financial statements because they say they were preliminary. [192] at 6. They point out that one of the financial statements submitted

7

prior to the deadline set forth in the loan documents was not certified by a public accountant (as the loan documents require). *Id*. at 7. Similarly, they point out that the other financial reports were marked as "Draft for Discussion Purposes Only." *Id*. at 6–7. In other words, defendants say that further discovery is necessary to disambiguate the meaning of the financial statements Wells Fargo has attached to its motion (e.g., whether the final versions differ from the "draft" versions, whether other documents were submitted at later dates that superseded those attached here, etc.). I decline to consider them.

I also decline to decide whether generally accepted accounting principles establish that an event of default occurred. Neither parties' briefing addressed an important preliminary question (and one that was flagged in the December 20, 2018, Order): whether the interpretation and application of generally accepted accounting principles can be performed as a matter of law (in which case, it might be proper to interpret and apply those principles as part of a motion under Federal Rule of Civil Procedure 12(b)(6)) or whether such a determination requires the weighing of evidence and the finding of facts that are beyond the pleadings (in which case it cannot be decided as part of a motion under Rule 12(b)(6)).

Both parties advance differing interpretations of the term "generally accepted accounting principles," and those interpretations derive from competing readings of evidence extrinsic to the contract, such as the Financial Accounting Standards Board's Accounting Standards Codification, [189-2]; [189] at 10; [192] at 4, and guidance and comment letters issued by staff at the Securities and Exchange

8

Commission. [189-3]; [189-4]; [189] at 10–11. Neither party addresses which state's laws should be used to interpret the meaning of the term "generally accepted accounting principles," whether the term "generally accepted accounting principles" incorporates trade usage, *see Latex Glove Co. Inc. v. Gruen*, 146 Ill.App.3d 868, 874 (1st Dist. 1986) ("[t]rade usage is a practice or method of dealing in an industry of such regular observance in the area that it justifies an expectation of observance in the transaction at issue," and "gives particular meaning to and supplements or qualifies terms of an agreement"), and whether the Financial Accounting Standards Board's Accounting Standards Codifications and SEC guidance and comment letters they have submitted should be treated as law or evidence. *See Bristow v. Drake St. Inc.*, 41 F.3d 345, 352 (7th Cir. 1994) (trade usage "is evidence about public facts, public meanings").

Even though the Financial Accounting Standards Board is the "final arbiter" of generally accepted accounting principles, *Credit Union Nat. Ass'n, Inc. v. Am. Inst. of Certified Pub. Accountants, Inc.*, 832 F.2d 104, 108 (7th Cir. 1987), the principles themselves are not rigid enough to support a finding in this case that defendants' counterclaims for breach of contract have been rendered implausible as a matter of law:

> Far from a single-source accounting rulebook, GAAP "encompasses the conventions, rules, and procedures that define accepted accounting practice at a particular point in time." Kay & Searfoss, ch. 5, at 7 (1994 Update). GAAP changes and, even at any one point, is often indeterminate. "[T]he determination that a particular accounting principle is generally accepted may be difficult because no single source exists for all principles." *Ibid*. There are 19 different

9

> GAAP sources, any number of which might present conflicting treatments of a particular accounting question. *Id.*, ch. 5, at 6-7. When such conflicts arise, the accountant is directed to consult an elaborate hierarchy of GAAP sources to determine which treatment to follow. *Ibid.*

*Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 101 (1995). *See also Thor Power Tool Co. v. Comm'r*, 439 U.S. 522, 544 (1979) ("[g]enerally accepted accounting principles,' … tolerate a range of 'reasonable' treatments, leaving the choice among alternatives to management").

In this case, compliance with GAAP is a fact-specific issue and cannot be resolved as part of a motion to dismiss. *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 709 n.9 (3d Cir. 1996) (the district court "appropriately instructed defendants to raise their GAAP arguments, if at all, on a motion for summary judgment"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1421 (3d Cir. 1997) ("it is a factual question whether [Burlington Coat Factory's] accounting practices were consistent with GAAP"); *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 257 (5th Cir.), *opinion modified on denial of reh'g*, 409 F.3d 653 (5th Cir. 2005); *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 246 (8th Cir. 2008) ("GAAP is an 'elaborate hierarchy' of sources that accountants consult, rather than a 'canonical set of rules'"). I decline to consider these sources because they are outside the pleadings.

With evidence beyond the pleadings properly excluded, and looking only at the allegations in the pleading at issue, the counterclaim plausibly alleges that Worldwide did not breach either of the covenants contained in § 4.9(a) and § 4.9(b) of the credit agreement. *See* [1-1] at 22, § 4; [1-1] at 19, § 3; [181] at 38–40, ¶¶ 12–18; [181] at 45–46, ¶¶ 39–41.

Wells Fargo also says that an event of default occurred when defendants failed to provide them with certain financial information. [189] at 15–19. Some of Wells Fargo's arguments in that regard rely on admissions that were made in defendants' initial answer to their complaint. *See* [189] at 16–17 n.13 (citing [19]). Defendants prior admissions are *functus officio* and cannot be used to dismiss their amended counterclaim. *See Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204–05 (7th Cir. 1998) (once "certain facts or admissions from the original complaint become *functus officio*, they cannot be considered by the court on a motion to dismiss the amended complaint"). I decline to consider those admissions.[6]

Again, some of Wells Fargo's arguments rely on exhibits attached to their own complaint, and they make no argument that such exhibits are mentioned in, or central to, defendants' counterclaim. *See Wright,* 29 F.3d at 1248; *Brownmark Films, LLC,* 682 F.3d at 690; *Levenstein,* 164 F.3d at 347 (7th Cir. 1998). Nonetheless, defendants amended counterclaim incorporates by reference Exhibits H through K, Q, O and R to Wells Fargo's complaint, [181] at 40–41, ¶ 21, and neither defendants'

---

[6] Similarly, Wells Fargo argues that Worldwide's waiver argument has been decided as a matter of law and that, because defendants have "not alleged any new facts that would change the … prior ruling," Wells Fargo's old arguments about the original waiver issue suffice to dismiss any waiver argument that may persist in defendants' amended counterclaim. *See* [189] at 15 n.11. The December 20, 2018, Order held only that the original counterclaim failed to plausibly allege that Cable had waived the covenants in question. *See* [164] at 16–18. That counterclaim premised waiver on an email that was attached to the counterclaim and quoted in full in the text of the counterclaim. [150] at 35–36, ¶¶ 26–28; [150-4]. The amended counterclaim contains none of the factual context that sunk the original counterclaim's waiver claim, *see* [181] at 38–40, ¶¶ 11–18, and that factual context is now *functus officio. Kelley*, 135 F.3d at 1204–05. In any event, defendants appear to have dropped the argument; the new counterclaim alleges only that Cable and Wells Fargo "encouraged" the write down. *See, e.g.*, [181] at 39–40, ¶ 17.

11

counterclaim nor their opposition to Wells Fargo's motion to dismiss raises any concerns about the ambiguity of these documents or their authenticity. *See Tierney*, 304 F.3d at 738–39; *Levenstein*, 164 F.3d at 347; *188 LLC*, 300 F.3d at 735. At both parties' urging, I consider Exhibit K to Wells Fargo's complaint, *see* [181] at 40–41, ¶ 21; [189] at 16 n.12; [1-1] at 62–65, but not Exhibit N, *see* [189] at 17 (which was not incorporated into the counterclaim, *see* [181] at 40–41, ¶ 21; [1-1] at 72–74).

One of Wells Fargo's arguments fails as a result. Wells Fargo argues that defendants failed to allow them to perform an audit of defendants' collateral in "scope and content satisfactory to" Wells Fargo, and failed to provide other financial information that was "in form and detail satisfactory to" Wells Fargo. [189] at 17 (citing [1-1] at 9, § 4.3; [1-1] at 11, § 4.11). But they cite nothing in the counterclaim that shows the materials were not satisfactory and instead rely on an email that is outside of the relevant pleadings and not properly considered here; it is neither referenced in, nor central to, defendants' amended counterclaim. *See id.* (citing [1-1] at 72, Exhibit N to Wells Fargo's complaint); *Tierney*, 304 F.3d at 738–39; *Levenstein*, 164 F.3d at 347; *188 LLC*, 300 F.3d at 735. They also point to provisions in the contract that they say would be rendered superfluous if defendants were permitted to determine whether the information they submitted sufficed, *see* [189] at 19 n.14 (citing [1-1] at 9, §§ 4.2, 4.3), but defendants are arguing that the requirements in question were satisfied—not that they should be ignored or read out of the contract (i.e., this is a factual issue, not one that depends on interpretation of the agreement). *See* [192] at 7–11.

One more of Wells Fargo's information-related arguments fails, too: although defendants may have admitted that they failed to provide Wells Fargo with a "detailed report of the inventory write down," *see* [181] at 15, ¶ 38,[7] none of the sections of the loan documents cited by Wells Fargo unequivocally require the delivery of a "detailed report of any inventory write down." *See* [1-1] at 9, §§ 4.2, 4.3; [1-1] at 11, § 4.11; [1-1] at 32-33.

But at least a few of the allegations in the amended counterclaim make it implausible that an event of default did not occur. The loan documents required that Appelbaum provide to Wells Fargo, "upon [Wells Fargo's] request," copies of Appelbaum's "financial statements." [1-1] at 42. In a letter dated May 5, 2017, which defendants incorporated into their amended counterclaim, *see* [181] at 40–41, ¶ 21, Wells Fargo "request[ed] that the Guarantor [i.e., Appelbaum] provide [Wells Fargo] with a signed, completed personal financial statement reflecting the current assets of [Appelbaum]." [1-1] at 63–64.[8]

---

[7] Fed. R. Civ. P. 8(b)(6) ("[a]n allegation--other than one relating to the amount of damages--is admitted if a responsive pleading is required and the allegation is not denied"); *Modrowski v. Pigatto*, 712 F.3d 1166, 1170 (7th Cir. 2013) ("failure to deny an allegation constitutes an admission").

[8] Defendants also failed to deny that these documents were not provided in response to that request. *See* [181] at 19–20, ¶ 55. In a number of other places, Wells Fargo seeks to use admissions in defendants' answer to the complaint as the equivalent of an allegation in the counterclaim itself. *See, e.g.* [189] at 7–8, 9, 15–18. Statements made in an answer to a complaint may constitute a binding judicial admission, *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 805 (7th Cir. 2005), provided they are "deliberate, clear, and unambiguous." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013). But whether those admissions can be properly considered as part of a motion under Rule 12 remains unclear; Federal Rule of Civil Procedure 56(c) provides for their consideration on summary judgment, and that is the usual practice. *See, e.g. Canon U.S.A, Inc. v. Nippon Liner Sys., Ltd.,* No. 90C 7350, 1992 WL 137406, at *2 (N.D. Ill. June 2, 1992); *Equitable Bank v. Evans Railcar Leasing Co.*, No. 85 C 10435, 1986 WL 7671, at *1 (N.D. Ill. June 30, 1986); *Barnes v. Duggan*

13

Defendants' amended counterclaim contains allegations addressing whether they met their obligations to verify that Worldwide was sufficiently collateralized, *see* [181] at 41, ¶ 23, cooperated with inventory inspections, *see, e.g.*, [181] at 42, ¶ 26, and produced other information as well. *See, e.g.,* [181] ¶¶ at 42–46, 27–40. Their opposition argues that they provided "the vast majority of the items [Wells Fargo] requested," [192] at 10, and "all of the requested financial information [defendants] *could.*" *id.* at 9. But defendants do not argue that Appelbaum provided the personal financial statements requested in the May 5, 2017, letter. *See* [192]. Nor do they cite to allegations in the amended counterclaim (or documents attached thereto) that show the Appelbaum's financial statements were provided; the amended counterclaim only discusses the provision of Worldwide's financial statements. *See, e.g.* [181] at 43, ¶ 29 (all of the information provided after mid-April 2017 was "about [Worldwide]"); ¶ 33 (Appelbaum provided Wells Fargo with Worldwide's year-end financial statements). Instead, the opposition to Wells Fargo's motion flatly admits that "Appelbaum had not yet provided [Wells Fargo] with copies of his personal financial statements for unidentified years (presumably for 2016)." [192] at 11.

---

*Trucking*, No. 90 C 5051, 1992 WL 186041, at *2 (N.D. Ill. July 28, 1992). *See also Kozlowski v. Greenridge Farm, Inc.,* 338 F.Supp.3d 828, 833 (N.D. Ill. 2018) (J. Feinerman) (rejecting plaintiff's argument that defendants' answer to the complaint contradicted the allegations in defendants' counterclaim because the argument "effectively asks the court to draw inferences against [defendant] as the non-movant"). Wells Fargo cites no law, nor makes any argument, confirming that such admissions may be considered as part of a motion under Rule 12 to dismiss a counterclaim. To the degree it addresses the issue at all, it points out that facts inserted in the complaint unnecessarily may be used to dismiss it—but it cites to no authority showing that facts admitted in an answer to the complaint can be used in a similar manner. *See* [189] at 6–7 (citing *McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006)). As with many of Wells Fargo's arguments, these issues are better suited for disposition under Federal Rule of Civil Procedure 56.

Defendants' general allegation that they have "never been in default of any of the covenants," is conclusory, *Ashcroft v. Iqbal*, 556 U.S. 662, 680–82 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007); [181] at 46, ¶ 41, and contradicted by their own statements in their briefing. *See* [192] at 11. Defendants' allegation that they "substantially performed all of their obligations," [181] at 46, ¶ 41, is inapposite: there is no exception in the loan documents for events of default that occurred despite "substantial performance," and defendants have not plausibly alleged that they substantially performed those portions of the agreement that would have required them to cooperate with Wells Fargo as it carried out the self-help remedies that were justified by the event of default (i.e., they have not plausibly alleged that their refusal to comply with Wells Fargo's demands did not constitute a material breach). *See* 15 Williston on Contracts § 44:55 (4th ed.) ("[a] breach of a contract is not material if substantial performance has been rendered").

In other words, defendants' counterclaim fails to plausibly allege that Wells Fargo's self-help actions—each of which were justified under the agreement if any event of default had occurred—breached the loan documents. *See* [1-1] at 13, §§ 6.2(a), 6.2(b); [181] at 46–47, ¶ 42.[9] Defendants also acknowledge that Wells Fargo's authority to implement those remedies hinged on the occurrence of an event of default. [192] at 11. Wells Fargo's motion to dismiss defendants' counterclaim for

---

[9] This does not necessarily mean that Wells Fargo's motion for breach of contract will succeed; in order to be entitled to judgment on that issue, Wells Fargo will either need to prevail under Federal Rule of Civil Procedure 56, at trial, or under some other appropriate rule of procedure that entitles them to judgment—not Federal Rule of Civil Procedure 12.

breach of contract is granted, and defendant's counterclaim for breach of contract is dismissed.

Wells Fargo also moves to dismiss defendants' claims for tortious interference with a contractual relationship, [189] at 19–23; [181] at 50–51, ¶¶ 55–62, and defendants' claims for tortious interference with a business expectancy. [189] at 24; [181] at 51–52, ¶¶ 63–71. In order to state a claim for tortious interference with a contractual relationship, defendants have to allege that Wells Fargo "intended to induce [the third party] to breach its contract with [defendants]"—not just that it intended to induce the breach of the contract in general. *See R.E. Davis Chem. Corp. v. Diasonics, Inc.*, 826 F.2d 678, 685 (7th Cir. 1987) (upholding dismissal of complaint for tortious interference with a contract because complaint "did not allege that the doctors *intended* to induce [the third party] to breach its contract with [plaintiff]"); *Gold v. Wolpert*, 876 F.2d 1327, 1331–32 (7th Cir. 1989) (allegation that defendant "intentionally and unjustifiably induced [third party] to breach an agreement or understanding with plaintiffs" was conclusory); *Zamouski v. Gerrard*, 1 Ill.App.3d 890, 897 (2nd Dist. 1971) (not enough to allege that defendants "carried on a series of systematic and intentional activities to induce the repudiation of the alleged settlement contract").

Many of the actions that defendants allege Wells Fargo undertook could have caused a third party to breach their contract with Wells Fargo, *see* [181] at 50, ¶ 58, but without an allegation that Wells Fargo intended that result, defendants' claims for tortious interference fail. *See R.E. Davis Chem. Corp.*, 826 F.2d at 685. A general

intent to harm the defendants is not enough. *See* [181] at 51, ¶ 62. Defendants do not address these arguments at all in their in opposition to the motion to dismiss, and forfeit any argument to the contrary. *See* [192]; *Pelfresne v. Vill. of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir. 1990). Defendants' claim for tortious interference with contractual relations is dismissed.

Defendants' claim for tortious interference with a business expectancy also fails. In order to state such a claim, a plaintiff must "allege[s] a business expectancy with a specific third party as well as action by the defendant directed towards that third party." *Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 356 Ill.App.3d 1010, 1020 (1st Dist. 2005). Defendants' complaint does not allege the identity of any specific third party—it alleges only unidentified "trading partners." *See* [181] at 52, ¶¶ 66–68. Again, defendants do not address these arguments at all in their in opposition, and they forfeit all arguments to the contrary. *See* [192]; *Pelfresne,* 917 F.2d at 1023.

## IV. Conclusion

For the foregoing reasons, Wells Fargo's motion to dismiss Worldwide and Appelbaum's counterclaims, [188], is granted. Although some of Wells Fargo's arguments go beyond the scope of a motion to dismiss, the counterclaim fails to state a claim for breach of contract because it concedes that at least one event of default occurred. Worldwide and Appelbaum's counterclaims for breach of contract, tortious interference with contractual relations, and tortious interference with a business expectancy are dismissed with prejudice.[10]

ENTER:

*/s/ Manish S. Shah*
Manish S. Shah
United States District Judge

Date: September 4, 2019

---

[10] Defendants have had two opportunities to plead their counterclaims. Another opportunity to amend would be futile—they have conceded an event of default and they forfeited their opposition to dismissal of the tortious interference claims by failing to address Wells Fargo's arguments.